Commonwealth ex rel. Williams *v.* Collins, Appellant.

534

Argued March 18, 1957.   Before RHODES, P. J., GUN-THER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (HIRT, J., absent).

*David H. Kubert,* for appellant.

*Joseph P. McLaughlin,* Assistant District Attorney, with him *Thomas M. Reed,* Assistant District Attorney, *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY WOODSIDE, J., June 11, 1957:

The appellant was convicted before a jury, and sentenced in the Municipal Court of Philadelphia, on the charge of neglecting to support a child born out of wedlock. He appeals from the refusal of the court below to grant him a new trial.

Counsel for the defendant complains about a number of insignificant occurrences during the trial which neither alone nor collectively warrant the granting of a new trial.

First, he objects to a reference to the defendant as "father" which the trial judge made in his charge. Counsel admits in his brief that the judge's reference was a "slip of the tongue." The slip appears in the following part of the charge: "And she testified that he told her then that he would not contribute to the child's support because, the mother said, that the *father* told her that he had heard from somebody else that he was not the father of the child. Therefore, if

the jury finds that the defendant is the father of this child, then there had been made out a case of neglect to support a child born out of lawful wedlock. I say the essential feature in this case is the determination is this defendant the father of that child."

After completion of the charge the defense counsel properly called the attention of the trial judge to the erroneous reference, and stated that "an unfortunate statement was made which you did not intend." To this the trial judge replied, "The defendant in place of the father."

Taking the charge as a whole this reference could not possibly have confused the jury, and is no ground for the granting of a new trial. It did not indicate that the judge thought that the defendant was guilty, and it would not be ground for a new trial even if it did. *Commonwealth v. Cisneros,* 381 Pa. 447, 113 A. 2d 293 (1955).

The second contention of the appellant is that "the trial judge intemperately and rudely treated defense counsel".

Counsel quotes from the testimony six times in an effort to establish the trial judge's rudeness. We deem it unnecessary to refer to all the testimony quoted by counsel, but the following three paragraphs are typical examples of the conduct of which counsel complains.

"The Court: Say, aren't we going to get anywhere except where this girl has lived? The proceeding is a neglect to support case of a child born in the year 1950. Mr. Kubert: If your Honor pleases, the proceeding is a question of paternity in this case, and following that the question of neglect to support. The first issue is paternity, and that is where I am getting at. The Court: You are not going to find paternity in finding

where this woman is living today and where she has lived since the child was born." . . .

"Q. When did you get married? The Court: It doesn't make any difference. A married man can have a child, and a married man may be a defendant, and that has absolutely nothing to do with this case. Mr. Kubert: If your Honor, pleases . . . The Court: I have ruled, and I shall stand by my ruling, sir. Mr. Kubert: There was no ruling, and you made a statement. The Court: I told him not to ask that question, and it has nothing to do with this case, and I stand by it as a matter of law. Mr. Kubert: I take exception, sir. The Court: You may have an exception." . . .

"The Court: The objection is sustained. And counsel, I direct you to ask questions which you know are proper as a lawyer. What he told the Red Cross is immaterial, and you know it, and he can't testify to it. Mr. Kubert: If your Honor, please. I take exception . . . The Court: You have an exception, and now sit down and continue your case, sir. You have an exception. And I say to you . . . Mr. Kubert: May I ask you to please keep yourself under control, your Honor. The Court: You will not ask me to keep myself under control, and I direct you to resume your chair and ask proper questions. Mr. Kubert: I object to the idea that I am asking improper questions, and that is the only idea."

In order to have a perfect trial the judge should be patient and unemotional as well as unbiased, and counsel should be, among other things, respectful to the court. Unfortunately, human institutions are never perfect. The record in this case indicates that during the trial counsel for defendant was inclined to overemphasize relatively unimportant detail, a trait which detracts from the just determination of the main issue. This conduct sometimes irritates a trial judge seeking

to clear a crowded docket. Of course, the trial judge should not show his irritation, but such restraint is often difficult. Furthermore, the record shows that the counsel for defendant, having taken an exception to an adverse ruling, frequently insisted upon further unwarranted argument. In addition, he was disrespectful in making such derogatory, if not even contemptuous, remarks, as "May I ask you to please keep yourself under control, your Honor?" In the light of the counsel's conduct it appears to us that the trial judge was reasonably restrained in his remarks to counsel.

Appellant further contends that the jury was coerced into bringing in a verdict of guilt. After deliberating for an hour, the jury returned to the courtroom where the following took place: "The Court: The foreman will listen very attentively and answer just one question which I will put. And he will answer yes or no without any comment. Has the jury arrived at a verdict? The Foreman: No verdict. The Court: Has the jury arrived at a verdict? The Foreman: Yes, sir. The Court: Have all agreed upon a verdict? The Foreman: No, sir. The Court: Then the jury will return and continue its deliberations. It would be absurd for me to accept any verdict like the announcement made by the foreman. The jury will return for further deliberations. Mr. Kubert: On the record, will you make an exception of that remark? The Court: You will not argue this at this time, sir, and I direct you not to. Mr. Kubert: I have my exception on record, sir. The Court: You have no right to argue a question like that in the presence of the jury as a lawyer. Mr. Kubert: I just wanted to get an exception on record at the proper time when you made the remark."

Appellant particularly objects to the use of the word "absurd." In the light of the answers of the foreman

to the court's questions, and the short time that the jury had deliberated, it would have been absurd for the court not to require the jury to deliberate longer. There was no coercion.

It was 11:30 o'clock in the morning when the case was given to the jury, and 12:30 o'clock when it reported as set forth above. The trial judge made no arrangements for lunch for the jurors, and they had not yet received anything to eat when they returned to the courtroom with a verdict at 2:10 o'clock in the afternoon. When to feed jurors is within the discretion of the trial judge. We do not consider the judge's conduct in this case an abuse of discretion.

When the jury returned with a verdict at 2:10 o'clock defense counsel was present, but the district attorney was absent. The court had recessed until 2:30 o'clock, but as the jurors had not had lunch, the trial judge sent for the district attorney immediately. While the judge and jury were sitting in the courtroom waiting for the district attorney to arrive, defense counsel walked out of the courtroom after telling a court official he would be in the hall and wished to be notified when the court was ready to take the verdict. At 2:30 o'clock, when the time of the recess had elapsed, the defense counsel did not return to the courtroom, as it was his duty to do, but remained in the hall.

Upon the expiration of the recess, the trial judge took the verdict in the absence of both the district attorney and the defense counsel. Defense counsel, being in the hall, heard the verdict being taken, rushed in and asked that the jury be polled. This request was granted. He now claims it was reversible error to take the jury's verdict in his absence. We think that the reciting of the facts is sufficient answer to this contention, and that his argument on this point does not warrant comment or citation.

The judgment of sentence is affirmed.